## David Quatrella

| | |
|---|---|
| **From:** | David Quatrella |
| **Sent:** | Wednesday, February 29, 2012 12:40 PM |
| **To:** | ████████████████ @yahoo.com) |
| **Cc:** | ████ @att.net |
| **Subject:** | S████ Insurance Policy |
| **Attachments:** | 02-28-2012(3).pdf; 02-28-2012(4).pdf |

████:

Just so you are aware of what is going on, I sent the following email to all of the investors in the group that financed S████. ████ is amongst the group (with his brothers), through one of their pension plans.  I thought you should be aware of this in case ████ calls you.  Also, we are now in a grace period to make payment of the premium which was due January 27, 2012.  Please alert Mr. S████ that if he or ████████ receive any late notices or default notices in the meantime, they should send a copy to me ASAP.  We need  to pay a minimum premium of $77,000 by March 27, 2012 in order to avoid the policy lapsing.  I do not expect to miss the deadline.  Please do not share this email with Mr. S████ as I do not want him to think that the investors would call the loan and cut the S████s out of the deal completely.  My expectation is that the investors will share in the sale proceeds of the policy once the investors are made whole and receive their agreed upon return on the investment.  Let's keep our fingers crossed on all of this!

Please feel free to call me if you want to talk about this.

Dave Q.

Gentlemen:

As you will recall, you participated in an investment in the J████ S████ life insurance policy back in December, 2009.  This is a $10 Million life insurance policy insuring the life of J████ S████, who is a resident of ████████, CT.  The investors in the group loaned the money to the S████ family to finance the first two years' premiums owed towards the policy.  The intention was for the S████ family to hold the policy and to sell it after the second anniversary of the date of issuance of the policy, which was December 27, 2011.  In order to sell the policy, we needed to get up to date medical records for Mrs. S████ (which we did) and, using those updated medical records, get an updated life expectancy determination from an independent company that performs such determinations for the insurance industry (which we also did, using "AVS Underwriting, LLC").  At the time we invested in the policy, Mrs. S████'s life expectancy was estimated at 168 months.  Based on this determination, it was expected that her life expectancy would diminish over the past 2 years by at least 2 years or more, depending upon her health.  Instead, the new life expectancy determination which we obtained from AVS sets her life expectancy at 161 months, which is a decline of only 7 months over the past 24 – 26 month period.  This was not expected, and has impacted our ability to sell the policy at the present time.  The cause appears to be lack of details in Mrs. S████'s current medical records pertaining to her memory loss and early onset dementia, as well as her recent commencement of use of a new statin medication prescribed by her doctor starting during 2011.  She has been suffering with memory loss since at least 2008 and it appears to be getting worse over the past 4 years.  Her husband tells us that he has brought her most recent memory loss complaints to the attention of Mrs. S████'s family physician, but for whatever reason her doctor has not sent her for examination for recent examination by a geriatric specialist, nor has he included these complaints in Mrs. S████'s medical records.

There are two (2) insurance brokers presently working together in attempting to sell the policy █████████ who is based in California (who was the broker who originally obtained the life insurance policy for us) and █████ who is based in New Jersey. I have worked with both of these gentlemen in the past, and have had good experiences with both of them. They are both quite knowledgeable and experienced in this field. They have reviewed Mrs. S███'s medical records and believe that the records can be corrected. I am attaching to this email a copy of an email that I received from █████████, which details his findings, conclusions, and recommendations, including a recommendation that Mr. S██ be seen by a geriatric specialist. ███ has spoken to Mr. S███ directly about this, and Mr. S███ has agreed to cooperate in following ████ advice.

The good news is that ████ believes that the records can be corrected, which will enhance the value of the policy and bring it in line with our expectations as to sale value which were projected 2 years ago when we first invested in this policy. The bad news is that this is going to take 3 or 4 months to accomplish. A premium payment became due on January 27, 2012 which we have not, as yet, paid. We did not pay this premium because we were hopeful at the time that we could find a buyer for the policy based on the present medical records, which did not happen. We are in a grace period which expires on March 27, 2012. In order to keep the policy in force to give us the additional time which will be needed to have Mrs. S██ evaluated by a geriatric specialist, and to obtain new medical records and a new life expectancy determination, we have been advised that we should pay $77,000 to the insurance company towards the premium due on the policy. This payment will extend the policy through June 27, 2011 which should give us sufficient time to follow the advice which we have received from █████████ which is detailed in his email which is attached. If we wanted to extend the policy for 1 year, through January 27, 2013, the premium would be $165,000.

Based on our agreement with Mrs. S███ and her family, when the policy is sold the proceeds of the sale of the policy go first to our investor group to repay the principal of our loan to her family which was used to pay the premiums together with interest at 14% per annum, plus 8 points on the original principal which was loaned, before any money goes to Mrs. S███ or her family. Therefore, the original total investment of $595,500 with 14% interest plus the 8 points ($47,640) would be paid first from the sale proceeds. Then the additional $77,000 plus interest at 14% would be paid second. Thereafter, the money from the sale would go to Mrs. S███ and her family. Effectively, the additional $77,000 would be treated as a loan to the S███ family which would need to be repaid prior to the S███ getting any money from the sale of the policy. The additional premium money will therefor come out of the S███ end when the policy is sold. In addition, if the policy is not sold on or before June 1, 2012, then our investor group can call the loan and end up owning the entire insurance policy which is the collateral for the loan. So, if the policy is not sold by June 1, 2012, and our investor group elects to take over ownership of the policy, the S███ may get nothing from the proceeds of the sale of the policy. We may not, however, wish to assert this right to call the loan since we want Mr. & Mrs. S███ to continue to cooperate with us in the sale of the policy until it is sold. If they think they are not getting anything out of the policy, they may not be so cooperative even though the loan documents require such.

Attached to this email is a sheet on which I have itemized the amount that each investor would need to contribute towards the insurance premium due during March, 2012. I would need the money no later than March 16, 2012, so that I can send it to the insurance company in advance of March 27, 2012 (which would be the date the policy lapses for non-payment of premium). Please review all of this, and ████ email, and contact me if you have any questions or comments. I realize that some of this may be confusing, and I would be happy to discuss this in greater detail if you wish.

Thanks.

Dave Quatrella

*David L. Quatrella, Esq.*
Quatrella & Rizio, LLC
One Post Road
P.O. Box 320019
Fairfield, CT 06824

Tele: (203) 335-2222 Ext.310
Fax: (203) 255-6618
Email: dquatrella@qrlaw.com
Website: www.qrlaw.com