UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED
2017 JUN -5 A 9: 10
US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES OF AMERICA

v.

DAVID QUATRELLA            CRIMINAL NO.: 3:17CR0003
(AWT)

June 5, 2017

## AFFIDAVIT

I, David Quatrella, being over the age of eighteen (18) years and understanding the obligations of an oath, under penalty of perjury pursuant to the laws of the State of Connecticut, based upon first-hand knowledge unless otherwise indicated, do hereby state as if I were in open Court on this 5th day of June, 2017, as follows:

**A. Foundational Predicates For The Opinion of Declarant.**

1) I am the Defendant in this case and have attended every proceeding in this matter; reviewed all pleadings; and have

1

engaged in discussions with counsel regarding documents and exhibits;

2) I have been a licensed attorney since 1980, and have been admitted to the Connecticut, Pennsylvania and New Jersey Bars where I have been a member in good standing, continuously, until February, 2017 when I voluntarily agreed to an interim suspension of my law licenses in those three (3) states as a result of my guilty plea in the instance case;

3) During my years practicing law, my areas of specialization included real estate and corporate transactional law. My specialization did not include insurance law;

4) I had no written fee agreement with any of the investors nor did the investors pay me an attorney fee for providing legal services to the investors in connection with any insurance law transactions;

5) I have represented the investors (other than MB Apartments, LLC, and other than Raymond Rizio, who is an attorney), and received legal fees from these investors, individually, in legal matters concerning my areas of legal specialization, not related to these insurance transactions;

6) As a result of my legal representation of the investors in matters unrelated to these insurance transactions, I am familiar with their financial condition; and

7) Additionally, I considered the investors to be my friends and socialized with most of them, including visiting with many of them at their homes and businesses. I have also traveled with several of the investors, such as with Raymond Rizio, who I traveled with to Hawaii, Arizona, and the Bahamas; and with Anthony Julian, Raymond Julian, Daniel Julian, and Michael Picarrazi, with whom I traveled to California and Mexico.

## B. FAMILY RELATIONS AND FINANCIAL CONDITIONS OF INVESTORS

1) <u>The Julian Family Members.</u> Many of the investors are related to each other by blood and marriage. Raymond Julian (now deceased and represented by his Executrix and daughter, Jayna Lively) is the brother of Dominick ("Butch") Julian and the brother-in-law of Paula Julian who is the wife of Dominick Julian. Raymond Julian and Dominick Julian are the uncles of Anthony Julian, Daniel

Julian, Michael Julian, Guido Picarrazi, Jr., Michael Picarrazi, and Jayna Lively (the last six individuals being each other's first cousins).

2) <u>The McCarthy Family Members.</u> MB Apartments, LLC is the successor-in-interest to The Stavros Ganios Trust, which was one of the original investors in the subject life insurance policy transactions. James McCarthy was the Trustee of that Trust, and assigned the Trust's interests in the transactions to MB Apartments, LLC, the members of which are his daughters, Megan Murphy and Bridget McCarthy.

3) <u>Financial Condition.</u> Upon my knowledge and belief, all of the investors are wealthy individuals and successful and sophisticated businessmen and women, each having significant net worth; high annual incomes; and qualifying each of them as millionaires and/or multi-millionaires. Nearly all of the investors own and reside in homes which are appraised at approximaely $1.0 Million or more. James O'Brien, for example, is a long established and highly successful mortgage broker, working for a national mortgage brokerage company (Mortgage Master, a division of

Loan Depot). Mr. O'Brien owns one of the largest (@ 6,000 SF) and nicest homes in the Town of Trumbull, which he purchased from Raymond Rizio approximately ten years ago for $1,683,000. Although Mr. O'Brien has stated in his letter to the Court which was submitted with the investors' Motion to Intervene that the premium payments would jeopardize his children's college education, his children have, in fact, graduated from college. Raymond Rizio is sole owner of his long established and highly successful law firm. He has significant real estate holdings which generate significant passive income to him. Anthony Julian and his brothers, Daniel Julian and Michael Julian, also have significant real estate and other holdings which include, for example, a 20 acre site that they are developing for a Walmart Super Store in Waterbury CT; a large tract of land (several hundred acres) in Thompson CT which they mine for sale of stone, gravel and other natural resources; and an ownership interest in a thin-stone manufacturing business. Raymond Julian, who is now deceased, was the co-owner with his brother Dominick ("Butch") Julian of a long established and highly successful heavy

Loan Depot). Mr. O'Brien owns one of the largest (@ 6,000 SF) and nicest homes in the Town of Trumbull, which he purchased from Raymond Rizio approximately ten years ago for $1,683,000. Although Mr. O'Brien has stated in his letter to the Court which was submitted with the investors' Motion to Intervene that the premium payments would jeopardize his children's college education, his children have, in fact, graduated from college. Raymond Rizio is sole owner of his long established and highly successful law firm. He has significant real estate holdings which generate significant passive income to him. Anthony Julian and his brothers, Daniel Julian and Michael Julian, also have significant real estate and other holdings which include, for example, a 20 acre site that they are developing for a Walmart Super Store in Waterbury CT; a large tract of land (several hundred acres) in Thompson CT which they mine for sale of stone, gravel and other natural resources; and an ownership interest in a thin-stone manufacturing business. Raymond Julian, who is now deceased, was the co-owner with his brother Dominick ("Butch") Julian of a long established and highly successful heavy

5

construction business started by their father more than 75 years ago. He and his brother also have significant real estate and other investments, generating passive income. At the time of his death, Raymond Julian's estate was both Federally and State taxable and worth many millions of dollars. To the best of the undersigned's knowledge and belief, Raymond Julian's brother, Dominick Julian, and Dominick's wife, Paula Julian, have a similar net worth. Guido Picarazzi and his brother Michael Picarrazi, are the co-owners of a long established and highly successful construction company and also have other significant assets. They are both multi-millionaires. Laurindo "Lee" Pereira is the owner of the largest stair manufacturing company in Connecticut (if not in New England), a highly successful business. He also owns significant real estate holdings which generate significant passive income. Mr. Pereira is also a multi-millionaire.

## C. INVESTORS' EXPERIENCE WITH PREMIUM FINANCING AND THE LIFE SETTLEMENT INDUSTRY.

1) To the best recollection of the undersigned, and not having a transcript of the hearing available at the present time, the Court

(Hon. Judge Alvin Thompson) at the hearing on the Motion to Intervene held on May 23, 2017, questioned counsel for the Defendant, the Government and the investors as to whether there was an agreement on the material facts as alleged by the investors seeking to intervene in the Defendant's criminal proceedings. No objections to the facts were raised at that time with the exception of Defense counsel arguing that the losses suffered by the investors were the result of market conditions rather than as a result of the actions of the Defendant. In fact, many of the facts presented by the investors and their attorney were not accurate.

2) Many of the investors had invested in life insurance policies prior to the DS and JS policies, and were very familiar with the both the life settlement industry in general and premium financing in particular.  Anthony Julian, in fact, who was one of the lead investors in the investor groups and a highly successful and sophisticated businessman in his own right, participated with Defendant during the summer and early fall of 2003 in investigating the life settlement industry and premium financing of life insurance policies as an investment vehicle. Such

investigations included meeting with representatives of the life settlement industry; discussions with insurance agents and investment advisors; and research regarding the legitimacy of life insurance premium financing and the life settlement of life insurance policies.

3) The investors were given copies of the life insurance policies and the insurance applications.

4) Daniel Julian, who invested in the JS policy through his company pension (ADAM Industries Pension) was well versed in life insurance premium financing and life settlement of such policies both from attending meetings with Defendant; discussions with his brother Anthony Julian; and discussions with the Defendant. Daniel Julian, in fact, received a portion of the finder's fee paid by the insurance broker in the JS policy in consideration of bringing the insured to the attention of the broker and the investors.

5) Raymond Rizio is a licensed attorney since 1985 admitted to the Connecticut and New York Bars. He was the law partner of Defendant during the period March 1997 through May 31, 2015, and invested in the financing of several life insurance policies and

was aware of the structure of the transactions. He received copies of the life insurance policies and applications, as well as copies of other related and relevant documents. He made a profit on at least one policy which was premium financed prior to the DS and JS policies. Defendant terminated his partnership with Ray Rizio effective May 31, 2015 for reasons unrelated to this matter. Sometime thereafter, Raymond Rizio changed Defendant's password; blocked Defendant from access to his emails; and searched Defendant's emails, all without Defendant's knowledge, permission and consent. Defendant believes that the motivation was anger and revenge. Raymond Rizio provided copies of Defendant's email to the Government.

6) (RICH: I'M STOPPING HERE UNTIL I READ YOUR REVISED DRAFT OF THE MOTION)

### D. MISCELLANEOUS

1) Many of the facts and statements about the investors set forth in this Affidavit were previously provided to my counsel, Andrew Bowman, during the course of his representation of me through the time of sentencing. Upon reflection, Attorney

9

Bowman was blindsided by the late filing of the Motion to Intervene by the investors on May 11, 2017 (14 days prior to my sentencing) and the last-minute filing of the investors' Addendum with their letters on May 23, 2017 (the day of the hearing). On such short notice, I would not expect Attorney Bowman to have a photographic memory of what I said or wrote to him over the previous several months.

_____
David Quatrella

Sworn to and subscribed before me, the undersigned officer, this 5th day of June, 2017

_____
Jeffrey A. Bruner
Commissioner of the Superior Court