UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2017 JUN 20 A 9:31

US DISTRICT COURT
BRIDGEPORT CT

UNITED STATES OF AMERICA

v.

DAVID QUATRELLA

CRIMINAL NO.: 3:17CR0003 (AWT)

June 20, 2017

**RESPONSE IN OPPOSITION TO THE GOVERNMENT'S POSITION RE: RESTITUTION** (SEALED)

## INTRODUCTION

The Motion to Intervene on the issue of restitution landed in the Court's legal lap in blitzkrieg fashion. A motion to intervene was filed just two weeks before the sentencing hearing. It was heard two days before sentencing. (R. 32). This required a hearing without benefit of a thorough analysis by the US Probation Department.

This Opposition Response was invited by the Government through its Counsel, AUSA, Avi M. Perry, who informed the Undersigned that he was filing a Restitution Chart that requires input from Mr. LaBelle, counsel for the some of the investors in what is generally referred to as the D.S.Policy and the J.S. Policy. Both Mr. Perry and Mr. LaBelle have been exceptionally courteous and professional to the Undersigned and it is expected that through these post sentencing procedures all will bring the pertinent facts and law before the Court, an essential ingredient of a just and legal sentence. All have met and conferred during this process. The

Undersigned has shared its Chart 2A (attached) with Mr. Perry, which is a red line of the Restitution Chart provided by Mr. Perry to the Undersigned on June 13, 2017. The Government has filed its Position re: Restitution under seal and attached documents on June 19, 2017. (R. 54, 55). The Defense has timely filed this Reply and Attachments before the deadline of 10:30 AM on 6/20/2017.

The Defendant, David Quatrella, retained new counsel who first brought the irregularities of the entire sentencing procedure to the attention of the Court, especially singling out the Court's apparent concern at the hearing on the Motion to Intervene, by filing a Rule 35 A Motion (*Federal Rule of Criminal Procedure 35 (a)*, hereinafter Rule 35 (A), one that is rarely used but arguably written precisely for the circumstances of this case. (R. 42). By information and belief, this Honorable Court is going to require a briefing schedule and desires further factual and legal clarification before it rules on the Rule 35 (A) motion. Parenthetically, Rule 35 (A) does not stay the appeal process and Mr. Quatrella's prior counsel has timely filed the Notice of Appeal. Thus, Mr. Quatrella is not filing any post-sentencing pleading as a delay tactic and faces a report date of July 28, 2017.

Additionally, the litigation on the restitution issue and the Motion to Vacate the Sentence is not a sign that Mr. Quatrella is calling his plea into question, has changed his position on the remorse, or is violating the appeal waiver in the plea agreement. It is clearly indicated in the Rule 35 (a) Motion that Mr. Quatrella bases his challenges in large measure on the ineffective assistance of counsel who failed in his duty to investigate, confront witnesses and research the law.

## A. COMMENTS REGARDING GOVERNMENT'S RESTITUTION CHART.

1. Goldsby Policy Issues

Although there are a few investors in the Goldsby policy who were also investors in the Steen and/or Sherman policies, there are many investors in Goldsby who are not investors in either the Steen or Sherman policies. Mr. LaBelle was not retained to represent the Goldsby investors and hence there are many investors in that policy whom he does not represent. With respect to the A.G. Policy column on the Government's Chart, and in no way admitting or agreeing that it is appropriate for the Government to suggest that the investors in that policy should be entitled to restitution, the Defendant disagrees with the numbers set forth in that column. In fact, the Defendant believes that the investors in the A.G. Policy actually paid a higher total amount of money towards premiums on that policy, as reflected on the redlined chart prepared by Defendant and supplied to the Government.

In re-reading the plea agreement: 1) there is no agreement about loss; 2) it appears that AUSA, Avi Perry, introduced the Goldsby policy as relevant conduct at the sentencing phase; and 3) the Defense takes the position that the Goldsby policy cannot be used for restitution purposes. Based on information and belief, Mr. Bowman during the plea negotiations stated that the A.G. Policy (Arlyn Goldsby) was included in the plea agreement solely for purposes of relevant conduct and for calculating the offense level of the guidelines. By the same information and belief and with Mr. Bowman being unwilling to presently assist Mr. Quatrella with his recollection, memos, etc., Mr. Bowman stated to Mr. Quatrella that Mr. Quatrella was not being charged with any criminal activity related to the A.G Policy. Consequently, it is the position of the Defense that A.G Policy losses should not be factored into the equation for restitution.

The Defense is somewhat impaired because Mr. Quatrella's former counsel, Andrew Bowman, is not enthusiastic about providing information and has not assisted by responding to the requests of present counsel to comment of the intent of the plea agreement or furnish memos, etc. about the plea process:

"I will not be responding to this since attorney Hamar now represents David Quatrella. Since I have filed the Notice of Appeal, I will be filing a Motion to Withdraw in both the Second Circuit and the district court."

2. Sherman Policy Issues.

With respect to the D.S. Policy column, Investment Strategies, LLC did <u>not</u> pay the $78,000 payment reflected in the January 2016 column on the chart that Dan Labelle provided to the Court. The investors opted not to pay the January 2016 payment on the advice of Mr. Labelle, and the policy subsequently lapsed for non-payment of premium. The last payment of premium made by the investors was paid during November,2015 and the numbers in the D.S. Policy column are, consequently, off by $78,000 (too high) in Mr. Perry's chart.

3. Steen Policy.

The J.S. Policy column appears to be accurate.

4. Amount Recouped Column.

The "Amount Recouped" column appears to be incorrect. For example, the line item for Anthony Julian, Jr (who was only invested in the D.S. Policy) shows that he recouped $97,320.99 which could only be from the settlement of the malpractice claim. Since the

settlement amount was $960,000, and since his percentage of ownership in Investment Strategies, LLC was 11.3960%, he should have received $109,401.60 from the settlement, rather than the $97,320.99 amount reflected in that column. The Undersigned reasons that Mr. Perry must be using a net number which I assume Mr. Labelle provided, which is net of the attorney fees. If there are add on to any restitution request they should be brought into the light so the Court and Defense should have all relevant facts. Also, by way of example, the figures for the Amount Recouped by the investors who were only invested in the A.G. Policy (such as Robert Cacchione and Michael Perrin) reflect lower amounts than they actually received from the sale of that policy. The combination of the errors in both the amount invested and the amount recouped in the A.G. Policy (both being too low) causes the mathematics of both the A.G. Policy column and the Amount Recouped Column to be wrong in the Government's chart. In addition to the foregoing, the Amount Recouped column does not take into consideration the recent settlement of the J.S. Policy malpractice claim brought by the investors in that policy. The J.S. Policy civil claim has been settled for $315,000. All of the plaintiffs have signed off on the Release and Settlement Agreement, as has the Defendant. Based on the most recent information available to the Defendant and the undersigned at the present time, the only signature outstanding is Ray Rizio's on behalf of his law firm (Q & R) which was named as a co-defendant in the civil suit. Mr. Rizio has agreed to the $315,000 settlement amount, and initially agreed to the language of the Release and Settlement Agreement negotiated between the parties. However, he has been holding off signing and the Q & R attorney requested to amend the Release to carve out and except "restitution" from the Release, apparently as a favor to the investors since Mr. Rizio did not participate as an investor in the J.S. Policy. Mr. Quatrella's malpractice attorney, Charles Deluca, told the Q & R attorney in no uncertain terms that he would advise Mr. Quatrella to not

agree to this. The Chart submitted by Mr. Perry and agreed to by Mr. LaBelle had mathematical mistakes and other errors. However, Mr. Perry made some modifications after the meet and confers with the Undersigned and a review of a redlined defense chart. (Please see the attached Redlined chart 2 A).

The Undersigned bases its belief that Mr. LaBelle has agreed to the Government's numbers in the Chart on the following email from Mr. LaBelle:

.**From:** LaBelle, Dan E. [mailto:LABELLE@halloransage.com]

**Sent:** Wednesday, June 14, 2017 1:59 PM

**To:** Perry, Avi (USACT) <aperry3@usa.doj.gov>; Andrew Bowman <andrew@andrewbowmanlaw.com>; richardhamar@aol.com

**Subject:** RE: Quatrella restitution - PLEASE READ [IWOV-iManage.FID618335]

Avi, these numbers look correct insofar as the contributions into the Steen and Sherman policies and the recovery from the Sherman settlement. On the Sherman settlement, you should be working off of the attached Settlement Statement which it appears that you are. I understand how you computed the returns on the Goldsby policy at 90% of the contribution amounts, but I am unable to confirm those figures as I did not represent the Goldsby investors.

### B. THE GAINS MADE BY THE INVESTORS WERE NOT OFF-SET AGAINST THE "ALLEGED" LOSSES AS REQUIRED BY LAW.

If the actual loss of a "Victim" is used, there must be a set-off of any gains he may have received as a result of the actions of the same Defendant, *U.S. v. Bazemore I*, 608 Fed.App. 207, 209 (5th Cir. 2015). As a reminder from the Rule 35 (a) Motion, counsel for the investors, cited *Bazemore II*, a per curium decision. Even if this had been a citable case, counsel misstated the principle of law. Neither the Government nor the defense cited *Bazemore, I*, or corrected counsel

for the investors who incorrectly cited and misunderstood the case. This busy Court could hardly be blamed for misrelying on a case first cited for restitution purposes only and not briefed or discussed by the Government or the Defense.

Besides a critical breakdown of the presentation of the case regarding the issues of the guideline calculations and restitution, the Government, the Attorney for the investors and prior counsel for Mr. Quatrella did not advise the Court that most of the investors made more than they lost on STOLI policies in which they invested prior to the Sherman policy, with Mr. Quatrella guiding them. At the very least, these profits should be credited against any losses in the Sherman and Steen policies. Please see Attached Chart 3A, The Set-Off, detailing the "Victims'" **Gains** as a result of their relationship with Mr. Quatrella.

Thus, at this late stage of the proceedings it has been a waste of precious judicial resources as the US Probation Office and the Court has not been informed of even the basic facts required to determine restitution, including the requirement in the restitution statute regarding Mr. Quatrella's ability to pay any restitution ordered, (and the guideline calculation).It is also not a stretch to argue that the Court was provided with the opposite facts and law and has been prejudicially mislead. Finally, is it not vitally relevant to intended loss that Mr. Quatrella made money for the investor group over and over for years, thus dispelling any intent to have these investors lose money? Speaking to the query, *Bazemore I* makes the question of intended loss a question of the circumstances with the burden squarely on the Government.

**C. THE INVESTORS ARE NOT "VICTIMS" AS A MATTER OF LAW.**

Although the Government did state to the Court at the intervention hearing that it had taken the position in the plea proceedings and in its Sentencing Memorandum that the investors were not victims, counsel for the Government also stated to the Court at that hearing, (by

information and belief; transcripts would greatly assist in resolving all post-sentencing issues), to the effect, "Additional information has come to my attention since the time that the Government originally decided that the investors were not victims entitled to restitution which may have caused me to arrive at a different conclusion.", .implying and giving the Court the clear signal that the Government had changed its position. *Bazemore, I, supra* at 16 spoke directly to this issue immediately before reversing the restitution award, "It is unclear why the government now advocates for an award it previously argued was inappropriate."

## CONCLUSION

Under any single theory, the investors can take nothing under 18 USC 3663(A) and the case law. When the three arguments are accumulated, the law applied to the evidence is overwhelming that these investors are not the type of persons contemplated to avail themselves to the Restitution protections contemplated by law. The Government cannot carry its burden to establish that any restitution is owed.

Respectfully Submitted,

______/SS/__________________
Richard A. Hamar, Esq
CA Bar 47952
Author of this motion.
Attorney for David Quatrella Pending Pro Hac Vice Application
Seeking to make a Special Appearance for the filing of this motion
Retained Counsel for Defendant David Quatrella
6/20/2017

/ss/
James P. Blanchfield, Esq.(CT18772)
Law Offices of James P. Blanchfield, LLC
929 White Plains Road, #326
Trumbull, CT 06611
(203) 261-9555 (tel)
(203) 261-9666 (fax)
jamesb@blanchfield-law.com
Pending Motion to be Excused from Proceedings
Sponsor of Application Pro Hac Vice

## CERTIFICATION OF SERVICE

I hereby certify that on June ~~19~~ 20, 2017 a copy of foregoing was filed and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties or by mail to the below list the names and addresses. Parties may access this filing through the Court's CM/ECF System.

Avi Perry, Esq.
U.S. Attorney's Office
157 Church Street, 24th Fl
New Haven, CT 06519

Andrew Bowman, Esq.
Law Offices of A. Bowman, LLC
1804 Post Road East
Westport, CT 06880

Daniel LaBelle, Esq.
Halloran & Sage, LLP
315 Post Road West
Westport, CT 06880

James P. Blanchfield
Federal Bar # CT18772

## CHART 2 A

| Investor | D.S. Policy | J.S. Policy | A.G. Policy | Amount Recouped |
|---|---|---|---|---|
| Anthony Julian, Jr. | $282,005.48~~90,894.36~~ | | | $109,401.60~~97,320.99~~ |
| Michael Julian | $132,883.18~~37,327.62~~ | | | $54,700.80~~45,858.60~~ |
| Raymond Julian | $282,005.48~~90,894.36~~ | $114,672.60 | $87,682.66~~134.12~~ | $232,319.14~~175,741.70~~ |
| Dominick Julian | $282,005.48~~90,894.36~~ | | $87,682.66~~134.12~~ | $191,369.14~~75,741.70~~ |
| Michael Picarazzi | $211,504.23~~8,170.89~~ | | | $82,051.20~~72,991.26~~ |
| Guido Picarazzi | $211,504.23~~8,170.89~~ | $73,406.00 | | $108,196.20~~72,991.26~~ |
| James O'Brien | $282,005.48~~90,894.36~~ | $73,406.00 | $58,455.14~~088.30~~ | $190,191.98~~52,600.46~~ |
| Paula & Raymond Julian | $282,005.48~~90,894.36~~ | | | $109,401.60~~97,320.99~~ |
| Ray Rizio | $290,125.13~~9,014.01~~ | | $116,910.20~~178.83~~ | $218,691.64~~1,683.87~~ |
| MB Apartments, LLC | $218,570.46~~25,459.42~~ | $114,672.60 | | $125,736.24~~75,429.98~~ |
| John Betar, Sr. | | $114,672.60 | $116,910.20~~178.83~~ | $150,240.04~~04,560.95~~ |
| Megan Murphy | | $57,347.00 | | $20,475.00 |
| Bridget McCarthy (Fine) | | $57,347.00 | $114,718.14~~6,178.83~~ | $129,765.04~~04,560.95~~ |
| Lee Pereira | | $146,812.00 | | $52,290.00 |
| Adam Industries Pension | | $92,685.98 | | $34,335.00 |
| Fred LaChioma | | $34,413.54 | $58,455.14~~089.42~~ | $66,930.38~~52,280.48~~ |
| Paula Julian | | | $58,455.14~~089.42~~ | $54,645.38~~2,280.48~~ |
| Robert Cacchione | | | $54,227.57~~8,089.42~~ | $50,417.81~~2,280.48~~ |
| Barbara & Robert Salvucci | | | $58,455.14~~089.42~~ | $54,645.38~~2,280.48~~ |
| Robert & Laurie Norris | | | $46,763.98~~470.87~~ | $43,715.40~~1,823.78~~ |
| Michael Perrin | | | $78,008.32~~9,001.47~~ | $72,826.51~~1,101.32~~ |
| Guy Holzinger | | | $58,455.14~~089.42~~ | $54,645.38~~2,280.48~~ |
| Kenneth Csehak | | | $29,227.68~~044.71~~ | $27,322.52~~6,140.24~~ |
| McDillon Holdings, Inc.~~Paul Edson~~ | | | $87,682.66~~134.12~~ | $81,967.54~~78,420.71~~ |
| | | | | Total |

| Net Loss |
|---|
| $172,603.88~~93,573.37~~ |
| $73,182.38~~91,469.02~~ |
| $252,041.60~~316,959.38~~ |
| $178,319.00~~202,286.78~~ |
| $129,453.03~~45,179.63~~ |
| $176,714.03~~218,585.63~~ |
| $223,674.64~~69,788.20~~ |
| $172,603.88~~93,573.37~~ |
| $188,343.69~~203,508.97~~ |
| $207,506.82~~64,702.04~~ |
| $81,342.76~~126,290.48~~ |
| $35,872.00~~57,347.00~~ |
| $42,300.10~~68,964.88~~ |
| $94,522.00~~146,812.00~~ |
| $58,350.98~~92,685.98~~ |
| $25,938.30~~40,222.48~~ |
| $3,809.76~~5,808.94~~ |
| $3,809.76~~5,808.94~~ |
| $3,809.76~~5,808.94~~ |
| $3,048.58~~4,647.09~~ |
| $5,181.81~~7,900.15~~ |
| $3,809.76~~5,808.94~~ |
| $1,905.16~~2,904.47~~ |
| $5,715.12~~8,713.41~~ |
| **$2,149,858.00~~,679,350.09~~** |

## CHART 3 A

### INSURANCE POLICY RETURNS ON INVESTMENT
### 2003 – 2009

1. **Chester Hawley** (Connecticut Lending Group, LLC)

| Members (Partial List) | Profit | Gross Return |
|---|---|---|
| James O'Brien | $53,075.21 | 46.38% |
| Anthony Julian | $26,546.55 | 46.38% |
| Raymond Julian | $26,546.55 | 46.38% |
| Dominick Julian | $26,546.55 | 46.38% |
| Daniel Julian | $13,255.40 | 46.38% |
| Guido Picarazzi | $13,255.40 | 46.38% |
| Michael Picarazzi | $13,255.40 | 46.38% |

2. **Nancy Van Every** (Connecticut Lending Group, LLC)

| Members (Partial List) | Profit | Gross Return |
|---|---|---|
| James O'Brien | $29,696.66 | 33.2% |
| Anthony Julian | $14,853.34 | 33.2% |
| Raymond Julian | $14,853.34 | 33.2% |
| Dominick Julian | $14,853.34 | 33.2% |
| Daniel Julian | $ 7,416.66 | 33.2% |
| Guido Picarazzi | $ 7,416.66 | 33.2% |
| Michael Picarazzi | $ 7,416.66 | 33.2% |

3. **Royal Adams** (Laurindo Pereira)

| Investor | Profit | Gross Return |
|---|---|---|
| Laurindo Pereira | $453,634.00 | 35% |

4. **Warren Bridges** (Texas Investments, LLC)

| Members (Partial List) | Profit | Gross Return |
|---|---|---|
| James O'Brien | $ 9,000.02 | 32.68% |
| Raymond Julian | $18,000.03 | 32.68% |
| Paula Julian & Raymond Julian | $22,500.00 | 32.68% |
| Guido Picarazzi | $ 9,000.02 | 32.68% |
| Michael Picarazzi | $ 9,000.02 | 32.68% |
| Anthony Julian | $13,500.00 | 32.68% |
| Bridget McCarthy | $18,000.03 | 32.68% |
| Dominick Julian | $ 9,000.02 | 32.68% |

5. **Michael Jacobs** (Texas Investments, LLC)

| Members (Partial List) | Profit | Gross Return |
|---|---|---|
| James O'Brien | $16,160.09 | 72.55% |
| Raymond Julian | $32,320.21 | 72.55% |
| Paula Julian & Raymond Julian | $40,400.15 | 72.55% |
| Guido Picarazzi | $16,160.09 | 72.55% |
| Michael Picarazzi | $16,160.09 | 72.55% |
| Anthony Julian | $24,240.05 | 72.55% |
| Bridget McCarthy | $32,320.21 | 72.55% |
| Dominick Julian | $16,160.09 | 72.55% |

6. **Donald Putnam** (Texas Lending, LLC)

| Members (Partial List) | Profit | Gross Return |
|---|---|---|
| Anthony Julian | $35,940.63 | 59.32% |
| Dominick Julian | $35,940.63 | 59.32% |
| Raymond Julian | $35,940.63 | 59.32% |
| James O'Brien | $35,940.63 | 59.32% |
| Guido Picarazzi | $17,970.31 | 59.32% |
| Michael Picarazzi | $17,970.31 | 59.32% |
| Michael Julian | $ 8,984.97 | 59.32% |
| Raymond Rizio & Barbara Rizio | $53,910.94 | 59.32% |

7. **Sam Barcelona** (Texas Insurance, LLC)

| Members | Profit | Gross Return |
|---|---|---|
| Anthony Julian | $10,829.02 | 29.03% |
| Raymond Julian | $10,829.02 | 29.03% |
| Dominick Julian | $10,829.02 | 29.03% |
| Daniel Julian | $10,829.02 | 29.03% |
| Guido Picarazzi | $10,829.02 | 29.03% |
| Michael Picarazzi | $10,829.02 | 29.03% |
| Michael Julian | $10,829.02 | 29.03% |

8. **Phyliss Newman** (Legacy Funding LLC)

| Members | Profit | Gross Return |
|---|---|---|
| Raymond Julian & Paula Julian | $45,000.00 | 30% |
| John G. Betar, Sr. | $30,000.00 | 30% |

9. **Sally Woodward** (Laurindo Pereira)

| Investor | Loss | Gross Return |
|---|---|---|
| Laurindo Pereira | ($124,000.00) | N/A |

10. **Marie Peterson** (Laurindo Pereira)

| Investor | Profit | Gross Return |
|---|---|---|
| Laurindo Pereira | $58,983.45 | 44.18% |

## SUMMARY OF PROFITS PER INVESTOR

| | | |
|---|---|---|
| 1) | Anthony Julian | $115,908.00 |
| 2) | James O'Brien | $143,872.00 |
| 3) | Laurindo Pereira | $388,617.00 |
| 4) | Raymond Julian | $192,439.00 |
| 5) | Dominick Julian | $113,329.00 |
| 6) | Paula Julian | $ 53,950.00 |
| 7) | Dan Julian | $ 31,501.00 |
| 8) | Guido Picarazzi | $ 74,631.00 |
| 9) | Michael Picarazzi | $ 74,631.00 |
| 10) | Bridget McCarthy | $ 50,320.00 |
| 11) | Ray Rizio | $ 53,910.00 |
| 12) | John Betar, Sr. | $ 30,000.00 |

TOTAL: $1,333,108.00