UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 3:17CR3(AWT) |
| v. | : | |
| | : | |
| DAVID QUATRELLA | : | June 23, 2017 |

**<u>Memorandum Regarding Restitution
and in Opposition to Motion for Resentencing</u>**

On January 4, 2017, the defendant, David Quatrella, pleaded guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 371. The defendant's conviction stemmed from his multiyear participation in an insurance fraud scheme. Among other things, the defendant, a real estate attorney, recruited a number of his clients to invest in life insurance policies that, as the defendant knew but his clients did not, were illegal. On May 25, 2017, the Court sentenced Mr. Quatrella, to a three-year term of imprisonment and ordered him to pay restitution to the victim-investors in an amount to be determined within 90 days of the sentencing hearing. *See* 18 U.S.C. § 3664(d)(5). The defendant timely filed a motion for resentencing pursuant to Federal Rule of Criminal Procedure 35(a). *See* Mot. for Resentencing (Doc. No. 42). He also has raised a number of issues concerning the appropriateness and amount of restitution to the victim-investors. *See* Resp. in Opp'n to Gov't's Position Re: Restitution (Doc. No. 58). For the reasons described below, the Court should deny the Rule 35(a) motion for resentencing, and enter a restitution order in the total amount of $1,976,558.62.

1

I.     The Rule 35(a) Motion for Resentencing

   A.     Legal Standard

Rule 35(a) provides that, within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error. Fed. R. Crim. P. 35(a). This Rule "is intended to be very narrow and to extend only to those cases in which an obvious error or mistake has occurred in the sentence, that is, errors which would almost certainly result in a remand of the case to the trial court for further action." Fed. R. Crim. P. 35 advisory committee's note. The Rule was not meant to allow a district court "to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion." *Id.*; *see also United States v. DeMartino*, 112 F.2d 75, 79 (2d Cir. 1997) (discussing previous version of Rule). Nor does the Rule permit resentencing based on new factual information that comes to light. *See* Fed. R. Crim. P. 35 advisory committee's note; *see also United States v. Bernabal*, 22 F. App'x 37, 41 (2d Cir. 2001) (summary order) (discussing previous version of Rule).

   B.     Discussion

The central thrust of the defendant's Rule 35(a) motion is that the victim-investors were not actually victims, but instead were knowing participants in the scheme to defraud. *See* Mot. for Resentencing at 3, 7-15. He also challenges the Court's intended loss calculation. *See id.* at 4-6. He is wrong on both points.

1.  **Victim Status**

At the time of Mr. Quatrella's guilty plea, neither party regarded the victim-investors as victims within the meaning of the Crime Victims' Rights Act, 18 U.S.C. § 3771 ("CVRA"). Hence, there was no calculation of actual losses suffered by the victim-investors, and relatedly, no discussion of restitution to be paid to them. On March 17, 2017, however, counsel for certain of the victim-investors advised the United States Probation Office by letter that the victim-investors were seeking to be treated as victims. A copy of the letter, with supporting documentation, was provided to the Government and counsel for Mr. Quatrella. On May 11, 2017, counsel for the victim-investors filed a motion to permit the victim-investors to be heard in connection with Mr. Quatrella's sentencing. *See* Mot. to Intervene and/or to be Heard Regarding Order of Restitution (Doc. No. 26). On May 17, 2017, Mr. Quatrella's attorney filed his opposition to the motion. *See* Resp. to Mot. to Intervene (Doc. No. 27). The Court held a hearing to decide the issue on May 23, 2017. Because the parties agreed there were no material facts in dispute, the parties made legal arguments but no witnesses were called. On May 25, 2017, the Court issued a written decision finding that the victim-investors were indeed victims under the CVRA and thus were entitled both to be heard in connection with Mr. Quatrella's sentencing and to restitution. *See* Order Re: Mot. to Intervene and/or to be Heard Regarding Order of Restitution (Doc. No. 36).

The defendant, having procured new counsel post-sentencing, now claims that the Court's ruling as to the victim-investors' status was infected by incomplete or

3

inaccurate factual information. He has identified new information that, he contends, shows that the victim-investors were "willing participants" in his crime. Mot. for Resentencing at 3. He argues that his prior counsel should have elicited this information by cross-examining or otherwise "pursu[ing] the right to confront" the victim-investors. *Id.*

As a threshold matter, the new factual information on which the defendant's motion relies is not a proper basis for resentencing under Rule 35(a). *See* Fed. R. Crim. P. 35 advisory committee's note; *Bernabal*, 22 F. App'x at 41. The defendant had adequate opportunity to present this information to the Court before sentencing, including by calling the victim-investors as witnesses during the hearing on May 23, 2017. He elected not to do so. That was a reasonable strategy under the circumstances. Confronting the victim-investors would have undercut the defendant's effort to appear contrite. During the sentencing hearing, the defendant turned to the victim-investors who were present and apologized to them. Presumably, that show of remorse was intended to convince the Court that the defendant understood and regretted the consequences of his actions. It helped him plead for leniency, and indeed he received a sentence significantly below the applicable Sentencing Guidelines range. Had the defendant instead attacked the victim-investors (as he now is doing), he would not have been positioned to make the same plea for mercy.[1]

---

[1] Moreover, had the defendant somehow established that the victim-investors *were* participants in the scheme, it would have increased his advisory sentence under the Guidelines. That is because it would have subjected him to a four-level role enhancement, *see* U.S.S.G. § 3B1.1(a), but not lowered the loss

4

Moreover, even if this new information *had* been brought to the Court's attention prior to sentencing, it would not have changed the calculus. For example, the defendant points out that many of the victim-investors were connected to each other by family or business ties. *See* Mot. for Resentencing at 8-9. But it is hard to see why this matters. The defendant also discusses in great detail the victim-investors' personal finances, *see id.* at 11-13, but this blame-the-victim approach goes nowhere. Even highly sophisticated investors can be defrauded—especially where, as here, the perpetrator is someone the investors trusted and turned to for legal advice for years.[2]

Similarly, the defendant notes that certain of the victim-investors had previously invested in other life insurance policies in which Mr. Quatrella was involved. *See id.* at 9-10, 13-15. But these earlier investments involved lawful "life settlements," not illegal "stranger-oriented life insurance" ("STOLI") policies. *See United States v. Binday*, 804 F.3d 558, 565 (2d Cir. 2015) (explaining distinction). That is clear from the defendant's affidavit. *See* Def.'s Aff. at 7-8 (Doc. No. 43). Hence, the victim-investors' involvement in these earlier policies would have made them *more*, not less, unsuspecting that the policies at issue in this case were illegal.

---

calculation, which was based on intended loss to the victim insurance companies ($14,982,714.27) and not actual loss to the victim-investors ($2,283,886.68), *see* U.S.S.G. § 2B1.1, application note 3 (explaining that loss is the greater of intended loss or actual loss).

[2] The detailed description in the defendant's motion of the victim-investors' personal finances is highly inappropriate. That type of sensitive information should be protected from public disclosure in any case. But its disclosure here is particularly concerning because the defendant concedes he learned many of these details through his attorney-client relationship with the victim-investors. *See* Def.'s Aff. at 2 (Doc. No. 43).

The defendant also points out that certain of the victim-investors received copies of the illegal STOLI policies. *See* Mot. for Resentencing at 10. That is true and was disclosed to the Court prior to sentencing. *See* Gov't Sen. Mem. at 10 n.6 (Doc. No. 24). Thus, the Court was aware of this fact. And the context is crucial here: the victim-investors were longtime clients of the defendant. They trusted him implicitly. They signed what he counseled them to sign, and did not scrutinize the documents he gave them—whether lengthy commercial real estate transaction forms or the illegal policies at issue here. *See id.*

Finally, the defendant attacks the veracity of certain of the victim-investors. *See* Mot. for Resentencing at 13-15. In particular, he contends that these victim-investors lied about the financial impact of the crime on them and their families. That is a serious allegation, and he does not come close to supporting it. For example, the defendant indicates that one victim-investor stated in a letter to the Court "that the investment he lost is needed for his children to attend college. He further stated that the premiums would jeopardize the college education of his children. However his children have graduated from college." *Id.* at 14. That mischaracterizes this victim-investor's letter, which says only that, at the time of his initial investment (in 2008), the money he invested with the defendant was earmarked for his children's college education, and that as time went on, he needed the money for tuition payments. *See* Supp. Mem. in Support of Mot. to Intervene at 4 (Doc. No. 32). There was nothing untruthful about those representations.

In sum, some of the new information in the defendant's Rule 35(a) motion is immaterial, some is misleading, and some is flat out wrong. None of it points to any error, much less clear error within the ambit of Rule 35(a).

### 2. Loss Calculation

The defendant's Rule 35(a) motion also challenges the Court's intended loss calculation. The defendant claims there is a "case on point that establishes clear error in the determination of loss." Mot. for Resentencing at 2. But he is plainly wrong about how intended loss was calculated here. In fact, the case he cites, *United States v. Bazemore* (*Bazemore I*), 608 F. App'x 207 (5th Cir. 2015), actually is consistent with the intended loss calculation in this case.

The defendant mistakenly claims that the intended loss calculation here was based solely on the face value of the three STOLI policies at issue. *See* Mot. for Restitution at 4. That is obviously incorrect. The combined face value of those policies was $35,000,000. *See* Presentence Report at ¶ 11 (Doc. No. 17). The intended loss was calculated to be $14,982,714.27—less than half the face value. *Id.* at ¶ 10. The difference results from a complicated analysis that accounted for premiums paid to the victim insurance companies, estimated interest the insurance companies could have earned on those premiums, and commissions paid by the insurance companies to the defendant and his co-conspirators. *See id.* at ¶ 11. That multifaceted approach is consistent with how intended loss was calculated in the leading STOLI case in this Circuit. *See Binday*, 804 F.3d at 595 n.37. Other courts, too, have endorsed similar

7

intended loss calculation methodologies. *See United States v. Jenkins*, 578 F.3d 745, 749–50 (8th Cir. 2009).

*Bazemore I*, cited by the defendant, is not to the contrary. There, the court found fault in an intended loss calculation based solely on the face value of STOLI policies. *See Bazemore I*, 608 F. App'x at 213-14. If the instant case involved the same error as *Bazemore I*, Mr. Quatrella's Rule 35(a) motion might have some traction. But it plainly did not. *See* Presentence Report at ¶ 11. Thus, the motion must be denied.[3]

## II. Restitution

The defendant has raised a number of issues concerning restitution. First, he argues that losses incurred by the victim-investors on the A.G. policy should not factor into the Court's restitution analysis, because that policy was not included by name in the information or plea agreement. *See* Resp. in Opp'n to Gov't's Position Re: Restitution at 3. But the information charged Mr. Quatrella with a conspiracy that lasted from June 2008 until January 2016. *See* Information (Doc. No. 1). There is no requirement that the charging document in a conspiracy case explicitly list every overt act committed in furtherance of the conspiracy. *See United States v. LaSpina*, 299 F.3d 165, 182 (2d Cir. 2002); *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir.

---

[3] The defendant appears to misunderstand why the *Bazemore* case is relevant here. It is not because it undercuts the intended loss calculation. It does not. It is relevant here because, after *Bazemore I* was remanded to the district court to remedy the erroneous intended loss calculation, it returned to the Fifth Circuit. *See United States v. Bazemore* (*Bazemore II*), 839 F.3d 379 (5th Cir. 2016) (per curiam). In *Bazemore II*, the Fifth Circuit affirmed the district court's order of restitution in favor of a lender who financed the premiums in a STOLI scheme. *See Bazemore II*, 839 F.3d at 388-91. Hence, *Bazemore II* was cited by counsel for the victim-investors here. *See* Mem. in Support of Mot. to Intervene at 8 (Doc. No. 26-1). Nevertheless, the Court did not cite *Bazemore II* in its ruling. *See* Order Re: Mot. to Intervene and/or to be Heard Regarding Order of Restitution.

1983). The D.S. and J.S. policies were included in the information as examples. *See* Information ¶ 22. The A.G. policy (which took effect in April 2010) clearly falls within the scope of the charged conspiracy. Moreover, at the plea hearing, the Government twice referenced the A.G. policy, so the defendant was on notice prior to pleading guilty that the Government intended to rely on that policy. *See* Tr. of Plea Hearing at 38-40 (Doc. No. 15).[4] Accordingly, losses on the A.G. policy should be accounted for in the restitution order. *See* 18 U.S.C. § 3663A(a)(2).

The defendant also contends that any losses on the D.S., J.S., or A.G. policies should be offset by gains the victim-investors realized on other, earlier investments in life insurance policies. *See* Resp. in Opp'n to Gov't's Position Re: Restitution at 6-7. But as noted above, it has been the defendant's own position throughout this case that these earlier policies were *not* STOLI policies. *See* Def.'s Aff. at 7-8 (Doc. No. 43). Nor were these earlier policies within the timeframe charged in the information.[5] The Government is aware of no authority that supports an offset for unrelated gains on lawful transactions prior to the charged conspiracy.

---

[4] The defendant incorrectly states that the Government introduced the A.G. policy "as relevant conduct at the sentencing phase." Resp. in Opp'n to Gov't's Position Re: Restitution at 3. There would be nothing wrong with that approach, but the plea hearing transcript clearly shows the defendant was on notice prior to entering his guilty plea.

[5] The defendant now appears to be taking the contrary position that these earlier policies *were* STOLI policies. *See* Resp. in Opp'n to Gov't's Position Re: Restitution at 7. If so, that raises other issues that will need to be addressed in due course. But it would not affect restitution since these earlier policies still would fall outside the temporal scope of the charged conspiracy (and thus, for instance, these policies were not used for intended loss calculation purposes; nor was the defendant's gain from these policies counted toward his forfeiture obligation).

The Government has filed concurrently (under seal) a chart listing the victim-investors who are owed restitution, and the amount owed to each. The defendant identified a number of mistakes in a previous version of this chart. *See* Resp. in Opp'n to Gov't's Position Re: Restitution at 3-6. After conferring with counsel for Mr. Quatrella and the victim-investors, the Government has fixed those mistakes. The attached chart reflects the parties' consensus as to the correct restitution figures.[6]

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY
United States Attorney's Office
157 Church Street, 25th Floor
New Haven, CT 06510
avi.m.perry@usdoj.gov
203-821-3700
Federal Bar No. phv07156

---

[6] Mr. Quatrella maintains his objection to paying any restitution based on his argument that the victim-investors are not victims, as well as his objection to paying any restitution on losses related to the A.G. policy, and his objection that any restitution order should be offset based on profits to the victim-investors from their investment in earlier life insurance policies. Nevertheless, he agrees that, if these issues are not decided in his favor, the numbers in the Government's chart are accurate.

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 23, 2017, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

AVI M. PERRY
ASSISTANT UNITED STATES ATTORNEY