UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA
v.
DAVID QUATRELLA          CRIMINAL NO.: 3:17CR0003 (AWT)
                         June 30, 2017

## OMNIBUS REPLY TO GOVERNMENTS RESPONSE (R.64 ) TO DEFENDANT'S MOTION TO VACATE SENTENCE (R.42 ); AND OPPOSITION TO A RESTITUTION AWARD

-

## INTRODUCTION

The Government in its Response asks this Court: 1) to accept a formula of intended loss without analysis simply because the Government asserts it is the accepted formula in the Second Circuit; 2) to disregard the relevance of the allegations that the investors were not honest with the Court; 3)  to disregard that the Defendant had been promised if he entered into a plea agreement  that the Government would recommend  to the Court that the investors would not be designated as victims;  4) to disregard allegations made by the Defendant that the crucial factual evidence undercutting the Government's promise in its plea bargain was introduced two days before sentencing without an opportunity of US Probation to assist the Court with the veracity of that evidence (it is

1

understood and appreciated that the Court based its downward departure, in part, because of the  fact that the Court's decision two days before the sentencing hearing to treat the investors as "victims" represented a variation from the Government's consistent positionthat the only victim was the insurance company, but the Court still understood and was lead to believethat the investors were being candid and truthful) ; and 5) to accept the Government's clear implication in footnote 5 (p.9)  of the Response that Mr. Quatrella lied in his Affidavit on pages 7 and 8 in support of the Rule 35 (a) Motion. Mr. Quatrella stated therein that the investors and particularly Anthony Julian was well schooled in stranger originated policies.  He stands firmly by his Affidavit and looks forward to establishing that the prosecutor's allegation and implication that he will bring further proceedings related to the veracity of  Mr. Quatrella's Affidavit does not serve the Court's interest in resolving the issues pending before the Court.

The Government asks all this of the Court on strands of gossamer such as the reasoning: 1)  that the Court's hands are tied and has no power to consider whether the investors perpetrated a fraud on the court because the court cannot consider any new evidence in a Rule 35

(a) matter (p. 4, par.2, citing the Advisory Committee notes and Bernabal); 2) that gains by victims cannot be set-off against losses if the gains were before the operative date of the alleged conspiracy citing no law, policy, or reasoning; simply stating that "the Government is aware of no authority" permitting such a set-off; and 3) that the Government is the arbiter of what is and what is not a STOLI policy without expert testimony and simply relying on a case referred to as *Binday,infra*(p. 5, par. 2).

As the Court will see in the discussion below, the Government's authorities are far from convincing and in no way can deprive the Court from examining  whether there was clear error in the sentence imposed upon Mr. Quatrella.

## DISCUSSION

A. It is the Government, not the defense, which is woefully confused about its formula for 'intended loss,' leading this Honorable Court to a USSG miscalculation, clear error and certain reversal by the Second Circuit. The Government dismisses the most important factor in the guideline calculation and Mr. Quatrella's three-year prison term, i.e., a 20 level increase, by incorrectly claiming that the prosecutor's "formula" for loss

calculation is the same as used by the Second Circuit Court of Appeals. (p.7-8).

1. THE GOVERNMENT'S FORMULA IS PREMISED ON THE FACE VALUE OF THE POLICIES AT ISSUE. A simple piercing of the elements of the Government's "formula" demonstrates that the Government is basing its loss calculation on the premise that the face value of the policies purchased in the instant case is the major determinant of loss calculation.

The Government rightly distances its guideline reliance on face value; nevertheless, face value is precisely what it is using (p. 7, page.3).  Although nowhere in the Response does the Government use the term "face value," a review of the calculation shows the formula is the classic wolf in sheep's clothing.  On pages 6 - 8, paragraph 11, in the Revised PSR, as well as in the last draft of the PSR submitted to the Court prior to the sentencing hearing, the probation officer credits solely the government as the arbiter of the loss calculation. (R.PSR, p. 7, last line). The starting point and foundation for each loss calculation ultimately accepted by this Court in sentencing Mr. Quatrella to the three-year prison term reveals that the Government Response side-

steps with its esoteric description of its "complicated analysis" and 'multifaceted approach" (p. 7, par. 3)-that it is based on the "**face value of the policy**." (R. PSR, A. under the DS, JS and AG policies headings on pp. 7 - 8).  Although the B, C and D subsections offer two set-offs and one add-on, if the starting point is the face value of the policies, the subtractions and add-ons add intellectual fluff to a flawed premise. This would be like selling a used Honda sedan by using a laundry list of logical adds and subtractions, but starting with the sales price of a new Mercedes sedan.

That is not to say that US Probation, the Court or even Mr. Perry were unsophisticated used car buyers, only that the litigation of STOLI policy law is so rare and esoteric that the parties, US Probation and the Court would have greatly benefitted from expert testimony that could clearly explain the issue of insurance industry loss in STOLI policies.

If given the opportunity, the Undersigned will produce, at a hearing, a renowned expert who has qualified often in insurance STOLI cases to explain why the loss calculation used by the Government has no basis in law or fact. This will avoid the great waste of judicial resources that the Government's "formula" is inadvertently causing.

2. THE GOVERNMENT'S ASSURANCES TO THIS COURT THAT ITS "FORMULA" HAS BEEN ACCEPTED BY THE SECOND CIRCUIT IN *BINDAY, INFRA,*AND OTHER CIRCUITS IS NOT CORRECT.

Again, to demonstrate that even a bright, well intended prosecutor can be confused by the complexity of STOLI loss calculations pursuant to the USSG, the Government in its Reply confidently represented to US Probation and this Court that the formula used by the Government in the instant case is the approved formula in the Second Circuit. The Reply then goes on to assert that the Government's "formula" used to calculate Mr. Quatrella's prison sentence is also the national standard. The Government relies on the *Binday*,*infra* decision as authority that this Court is bound to the Government's calculation due to the holding in *U.S. v Binday*, 804 F.3d 558 (2nd Circuit 2014),although the opinion is obtuse and so confusing that Mr. Quatrella's past counsel relied on *Binday, supra* to urge the Court to grant probation due to no actual loss. When both adversaries are mainly relying on the same case there is either a failure to understand the case by one advocate or the case is

confusing and complex, hence not the greatest of guides to the parties or this Court.

However, despite the confusion of all counsel during the sentencing process, the District Judge in *Binday, supra* found a 22 level guideline increase based on the fact that the defendant in that case misrepresented the finances of the insureds and, in two cases, used inside information on the deteriorating health of the insureds to scam the investors who resold those policies to the defendants shortly before the insureds died . Because of that,the Defendants raked in death benefits of more than $15,000,000.00, resulting in the insurance companies having actual losses of $15,000,000.00 minus the premiums received.  These facts are very different than the facts in the instant case, where Mr. Quatrella did not misrepresent the age, health or financial condition of the insureds and there was no death and no payout, showing again that the formula used by the Government has no applicability to the sentencing of Mr.Quatrella.

The Government also relies on an Eighth Circuit case, by reference to which the prosecutor implies that the "formula" that he used in the instant case is the national standard; however, a casual

reading of that case compellingly distinguishes that case from the instant case.  *U.S. v Jenkins*, 578 F.3d 745 (8th Cir. 2009). That is because the defendants therein, as in *Binday,supra,* misrepresented the ages and health of the insureds whose applications were presented, and the insurance company paid off on death benefits on the falsely presented actuarial information. See: Response, p. 8, citing *Jenkins, supra*.

It is strongly advised that this Honorable Court read and consider the Petition for Certiorari to the U.S. Supreme Court ("Binday Cert Petition") in *Binday, supra.*  A copy of the Binday Cert Petition is attached hereto as Exhibit A. Although the Petition was not accepted and has no precedential value, it is enlightening in that  it amply and more clearly than the Second Circuit discusses the theory of loss and includes references to the transcripts of the testimony of two insurance company experts called by the Government that were not cited in the Circuit Court.  The insurance company experts make clear that the insurance company suffers no financial loss whatsoever in STOLI policies, but rather a loss of control to make policy decisions that relate in main part to the public image of the insurance industry; which image

the industry wishes to present as a family tool to bury a dead member and continue the family life with as little interruption and financial hardship as possible. The industry felt uncomfortable with STOLI policies because these policies made the life insurance policy appear to be a speculator's investment tool rather than the way the insurance companies intended as a comfort to families and their natural longing for continuity. As a parenthetical, it is disturbing that the Government apparently relied solely on the insurance companies' math to calculate intended loss rather than performing the work independently.  This is another indicator that Mr. Quatrella's prior counsel was asleep at the wheel for not recognizing the myriad of evidentiary challenges to computations that were submitted by the insurance industry with no gatekeeper in these proceedings.

Connecticut, being commonly referred to as the "insurance capital of the U.S.", is an insurance company's dream. Legislation that failed to make STOLI practice illegal in other states, like Florida  where elders are often protected by the State Legislature (which rejected insurance company lobbyists who were behind the bill to outlaw STOLI policies),has been adopted in Connecticut. In fact, in Connecticut

similar insurance industry sponsored legislation SAILED-though the
State Legislature.  Again, as suggested before, the Court and especially
the Government could benefit from an insurance industry expert as was
used in the Government's most relied upon case, *Binday, supra.*

Interestingly, the false formula submitted by the government to
determine the USSG loss is in actuality a mistake in math. And that
fits squarely with a second ground to grant a Rule 35 Motion. To wit,
the sentence is based on a math error in addition to clear legal error.

The Defendant herein is not clinging to the opposite pole that
there is no loss. Experts have bandied about theories that insurance
companies play every angle to make additional profits unknown to
insureds because a percentage of policies lapse,  meaning the insurance
company is enriched and their risk decreases.   The defendant does not
concede, however, that the insurance company's position is a valid
theory of loss.   The Undersigned, backed up by case law and insurance
company experts for both sides, could affix the loss and, as done with
the Restitution Chart which has been substantially agreed to, cooperate
fully with each other and either stipulate to the loss, or if there is a

disagreement, narrow the range and submit the issue to the Court with a brief regarding the differences including expert opinion.

Accordingly, this Court must vacate the sentence and use the proper evaluation of the loss in a new sentencing.

B. NEW FACTS CAN BE CONSIDERED IN A RULE 35 (A) MOTION.

1. Although the Government cites the Advisory Committee Notes as not permitting new factual allegations, the Government does not cite which year of the 11 amendments. Upon checking every year and every note, there was no mention that the proponent was not permitted to assert new facts as asserted by the Government. To dispel that notion, the denial of a Rule 35 (a) motion is independently appealable thus showing the facts are not frozen at sentencing as are the acts in a direct appeal.

2. The Government relies on a 2001 decision to further bolster the argument that no new facts can be considered. *U.S. v Bernabal*, 22 F. App'x 37 (2001).  However, the Government misreads this decision. It states the Court cannot <u>reconsider </u>facts already in the record. It does not say the Defendant cannot apprise the Court of new facts that enlighten the Court regarding issues in a Rule 35 (a) Motion.

C. THE GOVERNMENT'S ATTEMPT TO IMPROPERLY TAINT MR. QUATRELLA AS A BAD PERSON IN THE EYES OF THE COURT IS IMPROPER AND MUST BE WITHDRAWN BY THE GOVERNMENT FROM THESE PROCEEDINGS.

STOLI policies were not considered per se illegal in the time period 2003-2006.   There were no misrepresentations in the applications for those insurance policies, nor were there any questions asked by the insurance companies as to premium financing and intended resale of the policies at the time of issuance.  Consequently, these policies were not fraudulently induced or originated and were therefore "legal". The Government's and Mr. Quatrella's understanding of the term STOLI being limited to illegal policies is not, however, how most courts interpret the term STOLI, which can in fact include *legal* as well as *illegal* stranger originated life insurance policies.  See *Binday, supra*, at p.565.  To constitute a STOLI policy, the policy must be obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured. So long as the applications for insurance do not include fraudulent representations, these stranger originated policies are not illegal.  In fact, these types of STOLI policies

12

were "a popular investment in the mid 2000s for hedge funds and others…. until such time as "many insurance companies…adopted rules against issuing STOLI policies and took steps to detect them." *Binday, supra*, at 565. See also Attached Binday Cert Petition at pp.6 -8.

During the telephone conference with the Court, the Government demanded that Mr. Quatrella be estopped from asserting the set-off defense because he lied at the proffer. The Court interrupted the Government and distanced itself from the allegation that Mr. Quatrella lied in his proffer.  There is no recognized power of a Court to disarm a Defendant in his quest to establish a defense to any penalties he may be facing. There are no directed verdicts against a Defendant in a criminal case, and in general the government is tasked with heavy burdens to exact any penalties.  The law in general strongly favors decisions on the merits, and even in civil cases rarely grants defaults or judgment on the pleadings.    Specifically, the cases involving defendants who have allegedly lied in their proffer have had the evidence of what the defendant stated in his proffer presented to the trier of fact to be considered along with all of the other evidence presented.

Rule 16, Brady and other rights to confront this naked allegation are reserved as are all other rights if Mr. Quatrella is prejudiced by the allegations in footnote 5.

D.  The Government claims with no authority that there can be no set-off as permitted by the law of Mandatory Restitution because the gains of the investors were prior to the operative date of the conspiracy charge. Suffice it to say that US conspiracy law is the broadest net in the world and the Government uses that net to go forward in time, backwards in time, and in every horizontal reach possible. The Government cites no authority because it is simply an incorrect principle of law. If requested by this Court to further brief this issue, the Undersigned would gladly comply.

F. The Government cannot walk back on the consistent position which the Government has taken that the investors were not victims and suddenly cave in and not support that position two days before sentencing.  By information and belief, the Court did recognize that there was an inconsistency and that the Court stated at sentencing to the effect that Mr. Quatrella was caught off guard.  The Court fashioned a downward departure in the sentencing guidelines, in part, for that

reason. Again, why was the court doing the thinking and taking action while prior defense counsel stood mute regarding that issue.  However, what has not been considered thus far is the prejudice at sentencing because the Court was less likely to believe that Mr. Quatrella was an honorable man and give full credit to the 40 character witnesses which was the only contribution of any significance made by his prior counsel at sentencing and the intervention hearing just prior to sentencing. Not only did the prosecutor change his consistent position, but in allocution at sentencing he badly burned Mr. Quatrella and neutralized his prior counsel by comparing the "victims" to the sentencing witnesses of Mr. Quatrella. The prosecutor stated in effect that the supporters of Mr. Quatrella would be sitting on the victim's side had they gotten involved in the policies at issue. In other words the failure of the prosecutor to maintain the position relied upon by Mr. Quatrella was the perfect storm and likely affected his sentence.  The Undersigned alleges that the investors mislead the Court so all of the prejudice was compounded.

.

G. DUE PROCESS VIOLATIONS.

Mr. Quatrella appreciates the Court's recognition that the investor letters were introduced two days before sentencing and reserves all rights regarding the Due process claims related to that lack of notice and competent counsel.

## CONCLUSION

The proceedings were conducted at legal warp speed. From the Defendant and his wife being hounded criminally and civilly by sophisticated multi-millionaire investors who greatly profited numerous times prior to incurring losses due to market forces; to being rushed into a proffer by his own counsel; to a waiver of indictment; a waiver of rights to contest the evidence in any form or fashion and to a swift guilty plea; justice was administered on a rare fast track for a sophisticated charge rarely encountered in the system. The sacrifices of short-cuts and rushing through any process often results in poor decisions.   Sometimes this is acceptable in matters where cutting costs is the main concern. However, in the law, justice cannot be rushed.  It is

respectfully suggested that the parties take a deep breath, step back and work through Defendants sentencing slowly and with great care.

   Accordingly, the sentence pronounced on May 25, 2017 must be VACATED and a new sentencing date and referral to the US Probation office must be ordered.

 Respectfully Submitted,

_____/SS/_____

Richard A. Hamar, Esq
CA Bar 47952
Author of this motion
Retained Attorney for David Quatrella
Admitted Pro Hac Vice
Federal Bar Number **phv09048**
6/30/2017

.

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2017, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to Mr. Perry, Mr. LaBelle and Jim Blanchfield, local counsel for Mr. Quatrella.


_____/SS/_____
Richard A. Hamar
Federal Bar Number **phv09048**